Stephenson, J.
 

 The operative facts in this case not admitted in the pleadings are stipulated, so that the question of law involved is clearly presented.
 

 Max Senior, on March 14, 1932, instituted in the Court of Common Pleas of Hamilton county, Ohio, a suit for an injunction against the Tax Commission of Ohio, the County Auditor and the County Treasurer of Hamilton county, Ohio, wherein he sought to perpetually enjoin the Tax Commission, County Auditor and County Treasurer from assessing and collecting the intangible property tax on alleged equitable interests in land owned by him on January 1, 1932, and evidenced by transferable certificates of ownership, viz.:
 

 The reason given therefor is that the laws of Ohio purporting to tax equitable interests in land only when
 
 *599
 
 such interests are evidenced by transferable certificates are unconstitutional and void.
 

 Specifically, Senior claims that Section 5323, General Code, a section of the Intangible Tax Law (114 Ohio Laws, 714
 
 et seq.),
 
 is an arbitrary and unreasonable discrimination and amounts to taking of private property without due process and denies to him, a citizen of the United States, the equal protection of the law, in violation of his rights under Article XIY, Section 1, of the Amendments of the Federal Constitution, viz.:
 

 “* * *
 
 nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
 

 Senior further claims that the Intangible Tax Law is violative of Section 16 of Article I, Section 5 of Article XII and Section 2 of Article XII of the Constitution of Ohio, in effect when the law was passed. We quote from these sections
 
 seriatim
 
 so much of the constitutional provision as Senior claims has direct application to Section 5323, General Code, the particular section of which he complains.
 

 Section 16, Article I, Constitution of Ohio: “All courts shall be open, and every person, for an injury done" him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. * * * ”
 

 Section 5, Article XII, Constitution of Ohio: “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
 

 Section 2, Article XII, Constitution of Ohio: “No property, taxed according to value, shall be so taxed in excess of one and one-half per cent of its true value in money for all state and local purposes, * *. Land and improvements thereon shall be taxed by uni
 
 *600
 
 form rule according to value. * * *” (As amended November 5, 1929.)
 

 As the validity of Section 5323, General Code, is specifically attacked, it is herein set out, viz.:
 

 “The term ‘investments’ as used in this title, includes the following:
 

 “Shares of stock in corporations, associations and joint stock companies, under whatever laws organized or existing, excepting (1) those in such corporations and associations as constitute instrumentalities of the federal government for the taxation of which by the several states no provision is made by act of the congress of the United States, (2) those in financial institutions, dealers in intangibles and domestic insurance companies as defined by chapter four of this title, and (3) such as are defined in this chapter as ‘deposits.’
 

 “Interest bearing obligations for the payment of money, such as bonds, certificates of indebtedness, debentures and notes; certificates of deposit, savings and other like deposits in financial institutions outside of this state yielding income by way of interest or dividends in excess of four per centum of the principal sum withdrawable; and other similar evidences of indebtedness, whether negotiable or not, and whether or not secured by mortgage of or lien upon real or personal property or income, by whomsoever issued, excepting such as have been issued (1) by the United States or any of its' territories, districts, or dependencies, or (2) by any instrumentality of the federal government, or (3) prior to the first day of January, 1913, by the state of Ohio or any political or other subdivision or school district in this state and (4) bonds of the state of Ohio issued pursuant to article VIII, section 2a of the constitution of Ohio and (5) such as are defined in this chapter as ‘deposits’ and ‘current accounts.’
 

 “Annuities, royalties and other contractual obligations for the periodical payment of money and all con
 
 *601
 
 tractual and other incorporeal rights of a pecuniary nature whatsoever from which income is or may be derived, however evidenced, excepting (1) patents and copyrights and royalties derived from each, (2) interests in land and rents and royalties derived therefrom, other than equitable interests divided into shares evidenced by transferable certificates and (3) employment and partnership contracts and salaries and wages derived therefrom.
 

 “All equitable interests, life or other limited estates and annuity interests in any investment hereinbefore described, or in any fund made up of any such investments, wherever located.
 

 “When any corporation provides and carries out a plan for the allotment and sale of any or all of its unissued shares, or of shares purchased or to be purchased, to the employees of the corporation or to the employees of subsidiary corporations or to a trustee on their behalf, and for the payment of such shares in installments or at one time, and for the establishment of a special fund or funds in which such employees during the period of their employment or other period of time may be privileged to share on such terms and conditions as may be imposed in respect thereof; the relationship between the corporation or the trustee, if any, and each employee shall, for the purpose of determining the tax upon the shares concerned or upon any interest in them, be deemed to be a trust, and any tax upon the said shares or any interest in them shall be levied and assessed accordingly.”
 

 Senior further claims that Section 5388, General Code, providing rules for listing and assessing personalty; Section 5389, General Code, providing for the application of the term “true value in money” and defining “income yield”; Section 5638, General Code, providing for the classification of intangible property and rate of taxation; and Section 5322, General Code, defining “real property” and “land”, are so closely
 
 *602
 
 related to Section 5323, General Code, that they must be considered in applying the test of constitutionality to such section.
 

 The County Auditor and County Treasurer admit their official existence and further admit that Senior was, on January 1, 1932, and at the time of filing his suit, a resident of the city of Cincinnati, Hamilton county, Ohio, and on said date was the owner of the land trust certificates as claimed by him, and that as such owner he received • during the year 1931 an income of $2231.29, and they admit that unless restrained they will assess and collect the tax thereon in accordance with the tax laws of Ohio. They deny all other claims made by Senior.
 

 The Tax Commission of Ohio admits the official existence of all parties defendant and likewise denies all other claims made by Senior, and it avers affirmatively that Senior’s allegations are insufficient to give the court jurisdiction to grant him the relief prayed for.
 

 It was stipulated between counsel that the customary real estate taxes have been levied and assessed against the respective properties which are subjects of the trust agreements in certificates involved herein, and that the lands in which Senior claims an equitable interest have been assessed in the names of the legal owners or lessees thereof, according to law, without any deduction or diminution by reason of his claimed interest in such lands.
 

 The cause proceeded to trial, and twenty-two exhibits were offered and received in evidence. Upon examination it will be found that this documentary evidence is all-sufficient to raise the questions herein presented.
 

 The Court of Common Pleas found in favor of Senior and allowed him a perpetual injunction as prayed for by him. Error from this judgment and decree was prosecuted to the Court of Appeals of Hamilton county, which court reversed the Common
 
 *603
 
 Pleas Court and dismissed Senior’s petition. Error is now prosecuted to this court to reverse the judgment of the Court of Appeals.
 

 A righteous tax law is necessarily the product of good sense and good judgment. The first exception that our colonial fathers took to the laws of their parent land was based upon the alleged imposition of unjust taxes, and their posterity has held their banner aloft through all the intervening years — and this is as it should be.
 

 The relentless, incessant attack of the taxpayer against tax laws, state and federal, has resulted in giving to us systems of taxation that, while they are far from perfect, are reasonably fair as between state and citizen. It is fundamental that the expenses of government must be met with funds raised through the medium of taxation by one process or another. The people may place constitutional limitations on the tax rate as often as they see fit, and make them as drastic as even whim or caprice may suggest, but the government must live. So much money must be raised to pay its living expenses. The people having reduced the rate below the living point, the taxing authorities are driven to desperation and they are forced to their final resort, to wit, raising valuations and discovering new “things” and “rights” upon which a tax can be levied, keeping in mind the constitutional restrictions. Naturally the taxing bodies go first to corporeal property, and when that is exhausted they are driven to the incorporeal. The incorporeal property reveals much wealth in Ohio. The terms “incorporeal” and “intangible” are one and the same; neither of them can be “seen or handled.”
 

 In this case we are either dealing with land or an intangible right. The nature, value and extent of a right are measured by what you can obtain with it. What can Senior get with his land-trust certificates? Assuredly he can get his pro rata share of income
 
 *604
 
 from the trust estate so long as it is producing income. He insists that under and by virtue of his certificate he has an equitable interest in land upon which the taxes are paid by the holder of the legal title, and that the state has no power to make him pay on it again.
 

 Has not Senior equitable choses in action only? A chose in action is a right to sue. If it is an equitable chose in action, Senior must seek his remedy in a court of equity. Equity acts
 
 in personam
 
 and not
 
 in rem,
 
 but we do not regard this as an exclusive test in this case. It is a side-light.
 

 I
 
 Senior’s rights under his land-trust certificates can ¡ in no wise rise higher than the trust instruments under : which they were created. What is the most that Senior ! could get in any case with his land-trust certificates, in
 
 \
 
 case the lessee defaults in payment of rentals?
 

 An examination of the different trust instruments and the land-trust certificates assuredly reveals the fact that it was never intended that the holder of a land-trust certificate should obtain title in severalty to any part of the real estate involved in the trust. True, in the Lincoln Inn Court ground rent the certificate recites that Senior is the owner of 340/1275ths interest in the premises described in the lease, and it further provides that the trustee will deliver special warranty deeds for undivided interests in the premises, subject to the perpetual lease on the surrender of the particular certificate and other certificates, provided no deed shall be demanded for less than $10,000 par value of certificates, until after conveyance for $120,-000 par value has been made.
 

 This particular trust is denominated
 
 “Lincoln Inn Court Ground Rent”
 
 While we admit “there is nothing in a name”, resort may be had to a title to determine purpose and intent. Apparently the subject being dealt with was “ground rent.” In its last analysis, “ground rent” is money. According to the arrangement, the “ground rent money” was to-be divided
 
 *605
 
 amongst the holders of certificates, as their interests should be ascertained therefrom. True, the certificate holders could obtain a special warranty deed under certain conditions. Suppose the conditions were ripe, and Senior presented his certificates and demanded a deed. He would get a special warranty deed. We do not know what warranties were omitted. We do know that special warranty deeds are not noted for their marketability. Well, he gets his deed for 340/1275ths of the Lincoln Inn Court property, an undivided interest, and all in the world he could do with his deed under the most favorable circumstances would be to institute partition proceedings — if the time ever presented itself.
 

 All these properties are city properties and cannot be aparted. An appraisement would be returned, property sold, and all that Senior could get would be 340/1275ths of the net selling price of the land
 
 in money.
 

 It makes no difference which way he goes, he must take money in any event.
 

 It never was intended by the creators of the trust that Senior should at any time have any of the land in question, and Senior never expected it. All he wanted was his ground rent money, and he got it; and having gotten it he says it is real estate, that the real estate tax has been paid — or at least will be paid — and he cannot be taxed again.
 

 All .this argument is indulged to reflect our conclusion as to the Lincoln Inn Court ground rent and, from a legal standpoint, is probably “water over the dam”, inasmuch as Senior was the owner and holder of the certificates on January 1, 1932, intangible tax listing day in Ohio. It was held by the Supreme Court of the United States in the case of
 
 Union Tank Line Co.
 
 v.
 
 Wright, Comptroller Genl. of Georgia,
 
 249 U. S., 275, 286, 39 S. Ct., 276, 63 L. Ed., 602:
 

 
 *606
 
 “Taxes must follow realities, not mere deductions from inadequate or irrelevant data. ’ ’
 

 It was agreed by and between counsel that the decision of this court with respect to the land-trust certificates involved in the Fidelity Mortgage Company property, located at 1940 East Sixth street in the city of Cleveland, Ohio, shall be applied to the other certificates of equitable ownership in Ohio real estate involved in this case, excluding the Lincoln Inn Court building, and that the decision of the court with respect to the certificate involved in the Clark-Randolph building site, Chicago, Illinois, shall be applied to other certificates of equitable ownership in this case relating to real estate outside of Ohio. Consequently, it is only necessary to consider these two matters.
 

 The Fidelity Mortgage Company trust needs but little comment, as in this trust set-up all that the holder of a land-trust certificate thereunder can secure is his pro rata share of the net rentals so. long as it is a going concern, and a pro rata share of the net proceeds when the trust is wound up.
 

 In the matter of the Clark-Randolph building site, Chicago, Illinois, the trust arrangement is much the same, except that the trustee is given the election, in the case of the termination of the trust otherwise than by the exercise of the option to purchase, to distribute the trust estate in undivided legal interests or by sale and distribution of proceeds, as provided in the trust declaration.
 

 The power to tax is an attribute of sovereignty. The power to tax land extends only to lands within the boundaries of the taxing' state. Tangible personal property, permanently located in a state other than the domicile of the owner, is taxable in the state where it is permanently located. It is the general rule that intangible personal property, having neither' shape, form nor substance, can have no situs and is taxable at the domicile of the owner. Cases to support these
 
 *607
 
 rules could be cited interminably, but they are so fundamental that we deem it unnecessary to go further than to cite the case establishing the rule with reference to the situs of intangible personal property,
 
 Maguire
 
 v.
 
 Trefry, Tax Commr. of Mass.,
 
 253 U. S., 12, 17, 40 S. Ct., 417, 64 L. Ed., 739, and cases therein cited.
 

 This court followed the
 
 Maguire case
 
 in the case of
 
 Rowe
 
 v.
 
 Braden et al., Tax Commission of Ohio,
 
 126 Ohio St., 533, 186 N. E., 392. It is claimed thatj;hat casé is not in point here, because in that case the corpus of the trust consisted wholly of stocks, bonds and cash, whereas in the case before us the corpus of the trust is real estate. ■ If the law, as this court views it, was in harmony with such contention, this case could be easily disposed of.
 

 The terms “property right” and “property tax” are somewhat confusing, particularly in jurisdictions where as a matter of use and custom the words “property” and “land” are synonymous. "Whatever the lay view may be, it is universally known as a matter of law that “property” is in all probability our most comprehensive, modern legal term.
 

 Many years ago in
 
 Boston & Lowell Rd. Co.
 
 v.
 
 Salem & Lowell Rd. Co.,
 
 68 Mass. (2 Gray), 1, at page 35, a legal definition was given for property, and it is so plain and simple that it has been universally followed, viz.-:
 

 “Property *
 
 * *
 
 extends to every species of valuable right and interest, and includes real and personal property, easements, franchises and incorporeal hereditaments.”
 

 Likewise in the ease of
 
 Eaton
 
 v.
 
 Boston, C. & M. Rd. Co.,
 
 51 N. H., 504, 511, 12 Am. Rep., 147, the court said:
 

 “In a strict legal sense, land is not ‘property’, but the subject of property. The term ‘property’, although in common parlance frequently applied to a tract of
 
 *608
 
 land * * * in its legal signification ‘means only the rights of the owner in relation to it.’ ‘It denotes a right * * * over a determinate thing.’ ‘Property is the right of any person to possess, use, enjoy, and dispose of a thing.’ ”
 

 We have no quarrel with the language used by this court in the case of
 
 Cassidy
 
 v.
 
 Ellerhorst,
 
 110 Ohio St., 535, 144 N. E., 252, 42 A. L. R., 372, viz.:
 

 “It is a well-settled principle, so far as Ohio jurisprudence is concerned, that the shares of stock are property, but that the certificates are only the evidence of the ownership of those shares, and that they amount to no more than the title deeds of real estate. The certificates are a great convenience, and of great value as evidence, but they are certainly no more than evidence.”
 

 This is a good fundamental law. You cannot tax the evidence of a right, but that does not mean that you cannot tax the right or the product of the right. You cannot tax the land-trust certificates involved herein, but you can tax the product of the right which they evidence, unless such product is land already taxed.
 

 The fact that the declaration of trust and the certificate, one or both, require that their transfer shall be witnessed by all the solemnities required in the execution of a deed and the further arrangement by the parties that such transfer shall be brought within the purview of recording acts, adds nothing to their virtue. When one of these certificates is presented to the County Auditor for transfer and he sees that the certificate calls for an undivided interest in realty, he simply endorses the certificate “transfer unnecessary”, and the transferee delivers it to the County Recorder for record.
 

 If as a matter of fact these certificates represent an undivided interest in land, it would be unnecessary for
 
 *609
 
 the parties to make such provision, as the recording acts would require it.
 

 These trust arrangements, in their administration and distribution of net rentals, approach very close to a corporate entity; and our General Assembly must have sensed the situation that such organization was merely one set up by way of trust in order to effect a participation in the net rentals of real estate and thereupon enacted Section 5323, General Code, which in effect says, “You cannot escape taxation by means of such subterfuge.”
 

 In effect it says, “All incorporeal rights, of a pecuniary nature whatsoever from which income is or may be derived, excepting interests in land and rents and royalties derived therefrom,
 
 other than equitable interests divided into shares evidenced by transferable
 
 certificates”, shall be taxed at their true value in money.
 

 By this enactment the General Assembly delivered a solar plexus blow, to “equitable interests in real estate divided into shares evidenced by transferable certificates.”
 

 Did the General Assembly violate Senior’s constitutional rights in so doing? The record herein furnishes no evidence as to the initial cost of these certificates to Senior, but we assume that all parties concerned were good business men; that the creators and Senior were not in ignorance of the money market; that they charged and Senior paid substantially one hundred dollars for each six dollars of annual income he received from his land-trust certificates, and this was the head and front of the entire transaction.
 

 Using the County Auditor’s and County Recorder’s offices as a means of transfer and record renders unnecessary the keeping of a stock and transfer record by the trustee. By this arrangement the initial cost of incorporation and the annual franchise tax is saved.
 

 This is a suit in equity. Equity looks through form
 
 *610
 
 to the substance of things. Senior’s land-trust certificates were tantamount to stock certificates in a corporation. The value of the trust corpus in the trust set-up represented the capital stock of the concern. Instead of issuing shares entitling the holders to participate in dividends, land-trust certificates were issued representing a fractional part of the real estate, based upon the valuation fixed in the trust set-up, which certificates entitled their holders to participate in the net rentals of the real estate. Wherein is there a difference except in form?
 

 Since it is our holding that, under his certificates, Senior at best
 
 is the owner of equitable interests in real estate divided into shares evidenced by transferable certificates,
 
 and since he is not taxed on the equitable interests in real estate, but on the income derived therefrom, we fail to grasp wherein he has been made the victim of double or duplicate taxation.
 

 The learned Court of Appeals went into this question thoroughly and we are in accord with its holding that the facts in this case present no question of double taxation. Senior has not been discriminated against as the member of a class, neither has the class to which he belongs been the victim of discrimination by reason of Section 5323, General Code.
 

 He has not and will not be deprived of his property without due process of law, nor has he been nor will he be denied the equal protection of the law as a citizen of the United States by force of Section 5323, General Code.
 

 We find that Section 5323, General Code, has not deprived Senior of any of his constitutional rights, state or federal, and the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Jones, Matthias, Bevis, Zimmerman and Wilkin, JJ., concur.