It is accordingly concluded that the plaintiff is subrogated to the rights of the two earlier mortgagees and the decree will be drafted accordingly.

*Decree for plaintiff.*

MIDDLETON and FARR, JJ., concur.

MAUCK, P. J., and MIDDLETON, J., of the Fourth Appellate District, and FARR, J., of the Seventh Appellate District, sitting by designation in the Eighth Appellate District.

HEUCK, COUNTY AUD., ET AL. *v.* HAEFNER ET AL., EXECUTORS AND TRUSTEES.

(Decided January 21, 1935.)

*Mr. Louis J. Schneider,* prosecuting attorney, *Mr. Walter M. Locke, Mr. John W. Bricker,* attorney general, *Mr. William J. Ford* and *Mr. Thomas C. Lavery,* for plaintiffs in error.

Mr. *George Dornette*, Mr. *Jos. L. Lackner* and Mr. *Jos. L. Head,* for defendants in error.

Ross, J. This is a proceeding in error from the Court of Common Pleas of Hamilton county.

The trustees of the estate of Eleanora C. U. Alms filed on March 17, 1932, with the Auditor of Hamilton county, an application for exemption of property from taxation. They were prompted to this action by the provisions of Section 5398, General Code, extending immunity for past delinquency in returns upon a then full disclosure of all taxable property. The pertinent portion of the section is as follows:

"No court shall enjoin the auditor or treasurer from proceeding to assess or collect tax or penalty here-under, for or on account of any irregularities or informalities in the procedure, under this section, unless it shall further be made to appear that the property sought to be taxed was not taxable against the person sought to be charged or had been correctly returned by him; or that such person has made a return in the year 1932 and has fully and in good faith listed therein all the taxable property required by the law in force in the year 1932 to be so listed."

The Auditor of Hamilton county forwarded such application to the Tax Commission of Ohio with his recommendation that the intangible property be held not subject to tax in the hands of the trustees. A hearing was had before the commission, at its own instance, resulting in a ruling that the income from the intangible property in the hands of the trustees for the year 1931 amounted to $65,000, that $10,000 of such sum had been expended for charitable purposes, and that, therefore, 10/65th of the total value of the securities in the trust, having a par value of $725,650, was exempt from tax.

From this ruling the trustees took proceedings in error to the Court of Common Pleas of Hamilton

county, which reversed the ruling of the commission, holding that the trustees under the law are not required to make any return whatever. From such judgment of the Court of Common Pleas the Auditor and the Tax Commission now prosecute these proceedings in error.

The question of exemption is basically presented by the terms of a portion of the will of Eleanora C. U. Alms, as follows:

"Eighth—Being a great believer in Charity and desiring that the bulk of my Estate shall go to help the poor and the unfortunate, and, also having close to my heart the welfare of my native city of Cincinnati, I hereby give, devise and bequeath all the residue of my Estate, real, personal and mixed, and wherever situated, to Edward H. L. Haefner and William H. Lueders, in trust for the following uses and purposes:—

"My Executors and Trustees are directed to keep the principal of my Estate intact except as may be necessary from time to time to have to change the form by other investments as hereinafter provided, the income only to be used and in the order herein designated—

"First, I direct that annually the sum of Ten Thousand Dollars ($10,000.00) be expended by my Executors for such Charities as they may deem wise, without regard to creed or color.

"Second—To expend a sum of Twenty-five Thousand Dollars ($25,000.00) or more, if necessary, in improving the Frederick H. Alms Hall of The Cincinnati College of Music according to plans submitted and approved by me.

"Third—To purchase a tract of land consisting of about fourteen parcels and containing sixty and forty-two one-hundredth acres (60-42/100 acres) more or less, being adjacent to the Frederick H. Alms Memorial Park for a sum of approximately Sixty Thousand

Dollars ($60,000.00); and to convey the same to the City of Cincinnati perpetually for park purposes.

"Fourth—To erect an additional building in Eden Park to be a Wing of the Art Museum of the City of Cincinnati and, architectually and in size, to be in keeping with the other buildings of said Art Museum.

"I hereby direct that a portion of said building be set aside and that all my personal belongings that were gathered by me from all parts of the world, be placed therein and that the same be known as the 'Frederick H. and Eleanora C. U. Alms Collection'. Said belongings are at present in my residence corner Alms Place and McMillan Streets, Cincinnati. My Executors and Trustees are hereby directed to have all of my said belongings safely and suitably stored until such time as the new building herein provided for is constructed and ready for occupancy.

"It is my wish that if any of the material of my said home can be used in the construction of the new building herein provided for, the same be done.

"It is my intention that a sum not less than Two Hundred and Fifty Thousand Dollars ($250,000.00) of the income of my Estate be expended for the construction of said building.

"Fifth—To erect such a building on the grounds of the University of Cincinnati to be known as the 'Frederick H. and Eleanora C. U. Alms Building' as in the judgment of my Executors and Trustees will serve the interests and requirements of the University of Cincinnati and reflect credit and honor on the donors.

"My Executors and Trustees are instructed to expend approximately for this purpose a sum of Two Hundred Thousand Dollars ($200,000.00) or less.

"Sixth—After the income of my Estate has been expended in the manner heretofore provided herein, I direct my Executors and Trustees to accumulate the income from my Estate and distribute the same from

time to time as in their judgment seems best for charitable and educational purposes in the City of Cincinnati.—Such Trust to be perpetual.''

At the outset of this opinion it is necessary to dispose of certain preliminary contentions of both plaintiffs and defendants in error.

It is contended by the Tax Commission that the trustees have no right at this time to claim that they are by law excused from making a return, in view of their failure to present this question at the original hearing before the commission. On the other hand the trustees claim that this very point was the sole basis of their application. In this contention, they are not substantiated by the record. However, it is not necessary that they should have presented this matter, for the reason that it is an integral phase of the question now presented. Obviously, if they are not required by law to make a return, the question of whether the intangibles in their hands are exempt from taxation becomes wholly moot. Such question was a controlling factor in a consideration of the whole matter from its inception, and must now be first considered by this court in disposing of the case presented to it.

It is perfectly plain that the consideration of the question is entirely separate and apart from the question whether they are trustees for a beneficiary, constituting a charitable institution, or whether they themselves are such. The question arises by reason of the language of Section 5370, General Code, which is as follows:

''Each person shall return all the taxable property of which *he is the owner* excepting that required by this section or by the regulations of the commission to be returned for him by a fiduciary; but nothing herein shall be so construed as to authorize any person to omit from his return of taxable property his interest in investments and other taxable intangible property yielding income owned or held for his benefit

by a fiduciary and not taxed at the source, or other taxable property so owned or held by a non-resident fiduciary. The return of all the taxable property of a corporation shall be made by the president, a vice president or the secretary and by the principal accounting officer thereof; that of a partnership, by a partner; and that of an association, by the managing agent thereof in this state.

"In the following cases all taxable property belonging to the persons named or indicated shall be returned by the fiduciaries named:

"That of a ward by his guardian; that of a minor, an idiot, or an insane person having no guardian, by his father, if living, if not, by his mother, if living, and if neither father nor mother is living, by the person having such property in charge; that of an estate of a deceased person, by his executor, administrator or personal representative; and that of persons whose assets are in the hands of receivers, assignees for the benefit of creditors, trustees in bankruptcy or official custodians, by such receivers, assignees, trustees in bankruptcy or official custodians.

"Personal property used in business and taxable property of a non-resident, used in and arising out of a business transacted for him or on his behalf in any of the cases mentioned in section 5328-2 of the General Code, in the possession or custody of any agent, factor, bailee or other similar fiduciary, shall be returned by such fiduciary, except as may be otherwise provided by regulation of the commission; but as to such property in the possession, custody or legal ownership of a trustee the provisions of the next succeeding paragraph of this section shall be exclusive; provided, however, that a warehouseman shall not be required to return for taxation personal property consigned to him for the sole purpose of being stored or forwarded, if such warehouseman has no interest in

such property other than his warehouseman's lien thereon, or any profit to be derived from its sale.

"All the taxable property, excepting investments and excepting other taxable intangible property yielding income, of a person for whose benefit property is held in trust shall be returned by the trustee; and if any beneficiary of such a trust be a minor, an idiot or an insane person, residing in this state, and for whom there is no other fiduciary in this state, the commission may require such a trustee to return also the investments and other taxable intangible property yielding income, so held for the benefit of any such beneficiary, not taxed at the source.

"All returns made as fiduciaries' returns shall be separate from the fiduciary's return as an individual, firm, association or corporation and shall set forth the names of all persons toward whom the relation of fiduciary is borne or on whose behalf the returns are made, together with the capacity in which the fiduciary so acts for each of such persons.

"The commission shall have power to adopt and promulgate regulations covering the making of returns not inconsistent with this section or any other provisions of this chapter, to the end that all property taxable in this state shall be returned for taxation." (Italics ours.)

Are the trustees the owners of the intangibles for which they seek exemption?

It is claimed that under the decisions of our Supreme Court in *Rowe* v. *Braden, et al., Tax Comm. of Ohio,* 126 Ohio St., 533, 186 N. E., 392, and *Senior* v. *Braden, et al., Tax Comm. of Ohio,* 128 Ohio St., 597, 193 N. E., 614, the equitable ownership of the intangibles, for which exemption is sought, is in others than the trustees, and if any return is to be made it is to be made by such beneficiaries. The controlling facts in the instant case and in the cases noted develop the inapplicability of the authorities to the question before us.

In both *Rowe* v. *Braden, supra,* and *Senior* v. *Braden, supra,* the interest of the taxpayer in the investment was held taxable; not the income therefrom. The latter, under the statute and decisions, merely furnished the basis for the rate of taxation. However in the instant case it will be noted from the terms of the will that no one except the trustees has any interest of any nature whatever in the *corpus* of the trust fund. The tax on intangibles is not upon the *income*—it is upon the investments—and merely the rate of tax is regulated by the income. In the case of a non-productive investment the rate is fixed as a certain percentage of the value of the investment. Obviously, from the terms of the will, the University of Cincinnati and the Art Museum can have no interest in anything but the *income* from the trust fund. Neither of these institutions has any interest either legal or equitable in the *investment proper*. Whether these beneficiaries are subject to tax for their equitable interest in the accumulated income is a question which is not before us directly or indirectly. The question is whether the investments in the hands of the trustees are taxable in their hands as the owners thereof. We have no difficulty in finding that the trustees are the owners of such investments, and that such ownership is unqualified except as to the use of the income.

The trustees, under the mandate of the testamentary trust, are undoubtedly a charitable' institution. In *Jones, Treas.,* v. *Conn et al., Trustees,* 116 Ohio St., 1, at pages 8 and 9, 155 N. E., 791, it is stated:

"It is generally held that the organization of a trust to execute a charitable purpose constitutes a charitable institution, and this is the rule in Ohio as well as in other states. *Gerke* v. *Purcell,* 25 Ohio St., 229; *Humphries, Aud.,* v. *Little Sisters of the Poor,* 29 Ohio St., 201; *Cleveland Library Assn.* v. *Pelton, Treas.,* 36 Ohio St., 253; *Davis, Aud.,* v. *Cincinnati Camp Meeting Assn.,* 57 Ohio St., 257, 49 N. E., 401; *Little, Treas.,*

v. *United Presbyterian Theological Seminary,* 72 Ohio
St., 417, 74 N. E., 193.''

However, the investments now sought to be decreed
exempt from taxation must be used exclusively for
charitable purposes. The pertinent language of the
Ohio Constitution, Article XII, Section 2, is: ''General laws may be passed to exempt burying grounds,
public school houses, houses used exclusively for public worship, institutions used exclusively for charitable
purposes, and public property used exclusively for any
public purpose, but all such laws shall be subject to
alteration or repeal; and the value of all property so
exempted shall, from time to time, be ascertained and
published as may be directed by law.''

Section 5353, General Code, cannot of course extend
the exemption provided for in the Constitution, and
the Supreme Court in *Jones, Treas.,* v. *Conn et al.,
Trustees, supra,* does not attempt to so extend it.

Section 5353, General Code, is as follows:

''Lands, houses and other buildings belonging to a
county, township, city or village, used exclusively for
the accommodation or support of the poor, or leased
to the state or any political subdivision thereof for
public purposes, and property belonging to institutions
used exclusively for charitable purposes shall be exempt from taxation.''

It is urged that *Jones, Treas.,* v. *Conn et al., Trustees, supra,* is not a controlling authority because this
was a decision handed down before the Intangible Tax
Law became operative. This fact cannot in any way
affect the basic law announced by the court, which is
applicable to the instant case. Both the Constitution
and the statute upon which the case stands are unchanged so far as applicability to the facts is concerned.

The syllabus in *Jones, Treas.,* v. *Conn et al., Trustees, supra,* is as follows:

''Under Section 2 of Article XII of the Constitution

of Ohio, in its present form, the personal property belonging to an institution of public charity is exempt from taxation only when used exclusively for charitable purposes, and, if such personal property is invested for financial purposes during the period before the charity was being dispensed by the institution, it is not exempt from taxation during such period. (*Rose Institute* v. *Myers, Treas.*, 92 Ohio St., 252, 110 N. E., 924, L. R. A., 1916D, 1170, and *State, ex rel. Boss*, v. *Hess, Aud.*, 113 Ohio St., 52, 148 N. E., 347, approved and followed.)''

In the *Jones case* the testamentary trustees were holding a trust fund which they had been directed by the Marsh will to use for charitable purposes—the erection and maintenance of a home and school for certain children from the northern counties of Ohio. They were at the time of trial using a part of the principal for this purpose. What the court says there as to the use of the Marsh trust is directly applicable to the Alms trust. We quote from pages 13 and 14 of the opinion:

''We quote Caldwell, J., in *Cincinnati College* v. *State*, 19 Ohio, 110: 'But when any society, no matter of what kind, whether scientific, literary, or religious, enters the common business of life, and uses property for the purpose of accumulating money, the government should, and we think the statute does, treat it in the same way persons are dealt with, who are using property in a similar manner, and engaged in the same business.'

''In this state we feel that the question has been foreclosed by the case of *Benjamin Rose Institute* v. *Myers, Treas.*, 92 Ohio St., 252, 110 N. E., 924, L. R. A., 1916D, 1170, which held that the real estate belonging to an institution of purely public charity is exempt from taxation only when used exclusively for charitable purposes, and, if such real estate is rented for commercial and residence purposes, it is not exempt

even although the income arising from such use is devoted wholly to the purpose of the charity. This case has been followed and applied to personal property in the recent case of *State ex rel. Boss* v. *Hess, Aud.*, *supra.*

"The record herein shows that the income was accumulated into an earnings fund; that is, the investment was for commercial purposes, and for the accretion of the fund. During the years in question, before the charity was actually dispensed, the investment was not employed for exclusively charitable purposes. It was used for very worthy financial purposes, commercial purposes, prudently carried out on behalf of the trust. Under the amended section of the Constitution and the holding in the *Hess case, supra,* the fact that the income was later used exclusively for charitable purposes does not exempt it for the years in question. In other words, to quote the excellent phrase of the learned trial court, 'the law is against the exemption of the property until the ownership and use coincide;' and, though the ownership was in the trustees from the time they took the property over from the executors, the use did not begin until January, 1924."

The character of the beneficiary institution is not before us. Neither the commission nor the Court of Common Pleas reached a consideration of their character as charitable institutions.

Under the case of *Jones, Treas.,* v. *Conn et al, Trustees, supra,* it is not necessary to determine their character as charitable institutions. There is no evidence in the record as to what is their nature.

It is our conclusion, therefore, that the Court of Common Pleas committed error in reversing the ruling of the Tax Commission, in so far as the court held the investments in the hands of the trustees not subject to tax. There being no dispute as to the facts, we

therefore render judgment denying the application for exemption.

*Application denied.*

HAMILTON, P. J., concurs.