Austin et al., Appellants, *v.* Porterfield, Tax Commr.,
Appellee.

[Cite as Austin v. Porterfield (1972), 28 Ohio St. 2d 219.]

(No. 71-50—Decided January 5, 1972.)

220

*Messrs. Consiglio & Kurtz* and *Mr. Phillip Kurtz,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. Dwight C. Pettay, Jr.,* for appellee.

WILEY, J.   R. C. 5701.06(C) defines investments as "Annuities, royalties and other contractual obligations for the periodical payment of money and other incorporeal rights of a pecuniary nature from which income is or may be derived, however evidenced."

The appellants claim that Mary C. Austin has no proprietary interest in the writings which she has created, hav-

ing sold all her interests therein to the various publishers as evidenced by her contracts, and that the payments made to her, which are designated as "royalties" in the contracts, are not, in fact, "royalties" but are installment payments for the outright "sale" of her writings to the publishers.

To support this claim the appellants cite *Smilack* v. *Bowers* (1958), 167 Ohio St. 216; *Heuck* v. *Haefner* (1935), 51 Ohio App. 74; *Soderquist* v. *Glander* (1951), 156 Ohio St. 287; *Taylor* v. *Peck* (1953), 160 Ohio St. 288; *Fisher* v. *Bowers*, BTA, 25925-29953 (May 26, 1954).

The appellee relies on *French* v. *Glander* (1946), 146 Ohio St. 225, and *Hercules Galion Products* v. *Bowers* (1960), 171 Ohio St. 176.

In *Fisher* v. *Bowers*, the Board of Tax Appeals ruled that payments to a comic strip artist for the execution of a daily comic strip and a Sunday comic page were exempt from the intangible tax. The board held that the payments were for the sale of materials and that they are, therefore, exempt from the tax. It was contended by the taxpayer that the payments received should be exempt as salary by an employer to an employee. The decision by the board in the *Fisher* case can be harmonized with the decision of the board in this case on the difference in facts. Furthermore, the exact contract in *Fisher* was not set forth in the record of the proceedings before the Board of Tax Appeals.

In *Taylor* v. *Peck, supra,* Judge Hart, speaking for the court, stated:

"Clearly, the payments to Taylor by the corporation, under the original agreement, were income from royalties. However, under the contract of 1945, Taylor transferred his entire interest in the patents to the corporation and his ownership ceased. * * * The nature of the contract constituted a sale of capital assets and the sums received by Taylor represented installment payments of the consideration for the complete transfer of title."

In *French* v. *Glander, supra,* it was held that a contract between an author and a publisher providing for the payment of a certain sum of money by the publisher, com-

puted upon the number of books sold, is not a contract of employment. The court stated further:

"The sums of money so paid to such author are royalties or income yield from an investment which is subject to intangible personal property tax."

Professor Thomas E. French was the author of several books on the subject of engineering. He entered into a contract with McGraw-Hill Book Company for the publication and sale of the books and was to receive certain stated royalties, computed upon the number of books sold. Although the exact contract is not set forth in the opinion, it cannot be assumed that the contract with McGraw-Hill Book Company, a well-established book publishing company, would not be comparable to the contracts involved in the instant case. The court did more than negate the employer-employee relationship between French and McGraw-Hill, stating that:

"It is obvious that Professor French's manuscripts constituted property which was a proper subject of contract * * *.

"It is apparent from a reading of the contract that both author and publisher had an investment in the books. The author had invested his time, energy and skill; the publisher had contracted to invest its money. Each party was to share in the profits."

A great similarity exists in the facts in the case *sub judice* and in *French*. Furthermore, the contracts herein do classify the payments as royalties; they do not specify an outright sale; and they do provide for a reversionary interest in the author. To avoid an assessment arising out of the interpretation of R. C. 5701.06, an author could contract unequivocally to establish a sale in ordinary legal terms of sale. Instead, the parties have used the term "royalty," which they claim is not a royalty, and the term "reversionary interest," which is the custom in the field but which they claim is actually worthless. In other words, they claim a "sale," although the selling price is not a fixed price, but flexible, depending upon the success of the venture,

The Board of Tax Appeals made a determination on the factual issues before it. It is not the function of this court to substitute its judgment for that of the Board of Tax Appeals on factual issues. *Hercules Galion Products* v. *Bowers, supra* (171 Ohio St. 176).

Upon considering the entire record, this court states that the decision of the Board of Tax Appeals, as affirmed by the Court of Appeals, is neither unlawful nor unreasonable. The judgment is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CORRIGAN, STEPHENSON and LEACH, JJ., concur.

HERBERT, J., concurs in the syllabus and in the judgment.

SCHNEIDER, J., dissenting. In my opinion, the proceeds from the instant contracts constitute payment for professional services.

WILEY, J., of the Sixth Appellate District, sitting for DUNCAN, J. JUDGE WILEY of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE DUNCAN and JUDGE WILEY did so and heard and considered this cause prior to the resignation of JUSTICE DUNCAN on November 28, 1971.

STEPHENSON, J., of the Fourth Appellate District, sitting for STERN, J.