In this mandamus action brought in this court, the relator seeks the issuance of a writ directing the respondent, the Civil Service Commission of the city of Norwalk, to give the relator a grade of 86 in the competitive examination he took on January 31, 1949, to become a fire-truck driver in the classified service of the fire department of the city of Norwalk, and to certify relator's name to the appointing board as having received the highest grade of those eligible for appointment as such driver.
A demurrer to the petition raises the issue to be decided.
Relator alleges in his petition that for ten years prior to the date of the examination described he was a volunteer fireman in the classified service of the city of Norwalk and that on three separate dates in January, 1949, the respondent advertised that it would hold an examination on January 31, 1949, at a designated place and hour for the position of fire-truck driver.
Then follows the quotation of a number of sections of an ordinance of the city of Norwalk pertaining to the fire department of that municipality. Section 180 recites:
"Personnel. The fire department shall consist of one chief, one captain, one lieutenant, five drivers and not to exceeed seventeen firemen, and such temporary firemen as the chief or other officer in charge at any fire may summon to the aid of the department in emergencies." *Page 73 
The next quoted sections describe the duties of the fire department, set out the classification of the personnel thereof, prescribe the duties of the chief, cover the matter of the emergency appointment of additional firemen and officers on a temporary basis, and include other provisions relating to the suspension and dismissal of officers and employees in the department.
Section 185, as amended in December 1948, is headed "Compensation" and provides:
"(a) Chief. The chief of the fire department shall receive a salary of three hundred and six dollars ($306) per month, for full time service, payable in semi-monthly installments from the safety fund.
"(b) Captain and Lieutenant. The captain and lieutenant shall each receive a salary of fifty-four and 50/100 dollars ($54.50) per year, payable from the safety fund.
"(c) Drivers. Drivers of motor vehicles in the fire department shall receive compensation, payable in semi-monthly installments from the safety fund, and shall be classified as follows;
 "Class A. Two hundred and seventy-eight and 50/100 dollars per month;
"Class B. Two hundred and sixty-two dollars per month;
 "Class C. Two hundred and forty-five and 50/100 dollars per month.
Said classifications and compensations shall be fixed by the chief of the fire department, by and with approval of the Director of Public Service and Safety.
"(d) Volunteer Firemen. Volunteer firemen shall each receive the following compensation; twenty-five dollars per month for staying on duty nights at the department headquarters from 11:00 p.m. to 7:00 a.m., which may be credited to not to exceed four members of the department any one month; $3.85 for each *Page 74 
alarm of fire to which they respond, which sum shall include the first hour of service at such fire, and $2.20 for each hour of service rendered thereafter; $2.20 for each practice of the fire department attended, and fifty cents for each meeting of the fire department attended; provided, however, that no more than twelve meetings nor more than nine practices shall be paid for in any one year."
The petition continues:
"On January 31, 1949, the following persons took the examination for fire-truck driver, to wit: the relator, Wilber Spettel, Henry Landoll, Raymond Kramer, Robert Eggleston and Henry Preston. The said Wilber Spettel and the relator were the only persons taking said examination who were members of the fire department of the city of Norwalk and they were at the time classified as volunteer firemen. Wilber Spettel had been a volunteer fireman for a period of not to exceed three years and had also been a member of the armed forces of the United States of America. On the examination the defendant gave the said Wilber Spettel a grade of 69 to which it added a credit of 20% for service in the armed forces, making a final grade of 82.8. The relator received a grade of 80 and the defendant gave no credit to him for his seniority in years of service although he was entitled to a credit of 7.6% in addition thereto, so that he should have received a final grade of 86. The defendant gave the said Henry Landoll a grade of 60 to which it added a credit of 20% for service in the armed forces, making a final grade of 72; the defendant gave the said Raymond Kramer a grade of 71 to which it added a credit of 20% for service in the armed forces, making a final grade of 85.2; the defendant gave the said Robert Eggleston a grade of 90 to which it added a credit of 20%, making a final grade of 100 plus; and the defendant *Page 75 
gave the said Henry Preston a grade of 80 to which it added a credit of 20%, making a final grade of 96.
"Further your relator says that the defendant certified to the said board of control of the city of Norwalk, Ohio, the names of Raymond Kramer, Robert Eggleston and Henry Preston as being eligible for appointment as fire-truck driver and refused to certify the name of the relator with a grade of 86 as being the person entitled to appointment as fire-truck driver aforesaid."
The controlling question in the case is whether the examination for appointment as truck driver was properly held as an original and open examination under Section 486-10, General Code, or whether it should have been limited to a promotional examination under Section 486-15, General Code.
Briefly stated, the contention of relator is that the position of driver in the Norwalk fire department stands next above the grade or rank of volunteer fireman in that department and that under the provisions of Section 486-15a, General Code, eligibility to take the examination for appointment as driver was limited to those holding the position of regular volunteer firemen.
In making this point, relator emphasizes the fact that the position of driver is listed just ahead of that of volunteer fireman in both Sections 180 and 185 of the ordinance of the city of Norwalk, quoted above; that the compensation paid a driver is greater than that paid a volunteer fireman, and that the position of driver in fact represents a grade or rank higher than that of volunteer fireman.
From a reading of Section 185 of the ordinance relating to compensation, it is apparent that only the chief and the drivers devote full time to their duties *Page 76 
as members of the fire department and that the captain, lieutenant and volunteer firemen devote only a part of their time to the functions of that department, generally engaging in other and different occupations for their livelihood, the monetary returns from which other occupations, in some instances at least, might be greater than the compensation paid to either the chief or the drivers. It is difficult to see, therefore, that the compensation paid to the different members of the fire department for services rendered is a decisive factor in the case.
It seems to us that the positions of driver and volunteer fireman are in such different categories that it is impossible to say that one constitutes a higher grade or rank than the other. The duties and responsibilities of a driver and a fireman are widely different in character and scope, and there is nothing to indicate that a driver has any authority over a fireman, or viceversa. It stands to reason that a good and efficient fireman might make a poor and inefficient driver.
Moreover, the petition does not aver that relator made any objection or protest when others than volunteer firemen appeared and took the examination on January 31, 1949. Relator apparently waited until after the results of the examination had been announced and registered a complaint only after those results disclosed that he had failed to make a grade entitling him to consideration for appointment as driver over others who had taken the examination.
If it be conceded that this is a doubtful case, the matter must be resolved in favor of the respondent, because to prevail it is incumbent on relator to show a plain dereliction of duty on the part of respondent or that the respondent failed to perform an act specially enjoined on it by law. 25 Ohio Jurisprudence, 995-999, Sections 22 and 23. *Page 77 
Or, as this court said in the case of State, ex rel. Tarpy, v.Board of Education of Washington Court House, 151 Ohio St. 81,84 N.E.2d 276:
"In pursuing the extraordinary legal remedy of mandamus, a relator must show a clear legal right to the relief sought as a condition precedent to the issuance of a writ, and where * * * such right is not established or appears doubtful, the writ will be denied."
The court is unanimously of the opinion that relator has not set out a situation in his petition which clearly entitles him to the writ prayed for. The demurrer to the petition is therefore sustained and relator not desiring to plead further, the writ is denied.
Writ denied.
WEYGANDT, C.J., MATTHIAS, HART, ZIMMERMAN, STEWART, TURNER and TAFT, JJ., concur.