Middleton, J.
Section 1205, General Code, enumerates the powers of the Ohio Turnpike Commission and provides in part:
“The commission is hereby authorized and empowered :
í Í * * A
“(e) To construct, maintain, repair, police and operate turnpike projects as hereinabove defined; and to establish rules and regulations for the use of any such turnpike project;
( i # # #
‘ ‘ (k) To make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act.
“When the cost under any such contract or agreement, other than compensation for personal services, involves an expenditure of more than $1,000, the commission shall make a written contract with the lowest and best bidder after advertisement for not less than *586 two consecutive weeks in a newspaper of general circulation in Franklin county, Ohio and in such other publications as the commission shall determine. Such notice shall state the general character of the work and the general character of the materials to be furnished, the place where plans and specifications therefor may be examined, and the time and place of receiving bids.
“Each bid shall contain the full name of every person or company interested in it and shall be accompanied by a sufficient bond or certified check on a solvent' bank that if the bid is accepted a contract will be entered into and the performance of its proposal secured.
“The commission may reject any and all bids.
“A bond with good and sufficient surety as shall be approved by the commission, shall be required of all contractors in an amount equal to at least 50% of the contract price, conditioned upon the faithful performance of the contract;
“ (o) To do all acts and things necessary or proper to carry out the powers expressly granted in this act.”
The relator contends that Section 1205 (k) requires the commission to draft plans and specifications for use of alternative, available and suitable types of paving material. The admitted objective of relator is to force the commission to permit relator to submit bids for construction with asphaltic concrete which he manufactures. The commission on September 4, 1951, approved and adopted designs, plans and specifications for construction, calling for the use of Portland cement only.
In passing it should be noted that “Portland cement” refers to the method of manufacture and not to the product of any particular plant or company. Webster’s New International Dictionary (2 Ed.) defines “Portland cement” as follows:
*587 “A widely used hydraulic cement made by burning and grinding a carefully proportioned artificial mixture of pure limestone and clay, or of other aluminous material, or of aluminous limestone and pure limestone; — so called from the resemblance of concrete made with it to Portland stone * * *, the name being probably first applied to a cement of this type by an Englishman, Joseph Aspdin, about 1824.”
We find nothing in Section 1205 (k), General Code, or in any other portion of the Ohio Turnpike Act which directs or requires the commission to draw designs, plans and specifications for construction of this highway by the use of alternative materials. On the contrary, the statutes above quoted vest broad discretionary powers in the commission. The power to construct the turnpike and to make and enter into all contracts and agreements necessary to the performance of its duties necessarily includes the right to exercise discretion, Where the cost under such contract, excepting compensation for personal services, involves an expenditure of more than $1,000, the commission is required to make a written contract with the lowest and best bidder after advertising as specified. That provision does not require bids to be taken on all or any number of possible materials of which the paving could be constructed. It does not limit the discretionary power of the commission, acting in good faith, or prevent the commission from so exercising its discretion as to specify designs, plans and specifications calling for a particular material. This construction of the statute is supported by the type of notice which is required to be published. The notice “shall state the general character of the work and the general character of the materials to be furnished, the place where. plans and specifications may be examined * *
It is the right and duty of the commission through the exercise of its discretion to determine the plans, *588 specifications and materials. There is no provision requiring alternative bidding. The only restraint upon the exercise of discretion by the commission is that which the law imposes upon all administrative bodies, viz., that it act in good faith and not in abuse of its discretion.
If any ambiguity exists in the language used in Section 1205 (k), General Code, as to the necessity of taking alternative bids on material (and this court does not believe that such ambiguity exists), according to the weight of authority, reference may be made to the legislative proceedings and debates for assistance in determining the legislative intent. Caldwell v. State, 115 Ohio St., 458, 467, 154 N. E., 792; City of Toledo v. Public Utilities Commission, 135 Ohio St., 57, 19 N. E. (2d), 162; 2 Sutherland on Statutory Construction, 506, Section 5015; 70 A. L. R., 5 et seq.
In December 1951, after the commission had adopted the designs, plans and specifications calling for cement rather than asphalt construction, a special session of the Ohio General Assembly was held. At that session amendments to the Ohio Turnpike Act were proposed.
The Senate Journal for Wednesday, December 12, 1951, discloses the offering of an amendment requiring the insertion of the following:
“Bids for the construction of the turnpike shall be taken upon alternate, common competitive types of construction and the contract awarded to the lowest responsible bidder on all types received.”
That amendment was rejected by a vote of 23 to 8.
The House Journal for the same day discloses the offering of the same amendment and its rejection.
This action of the General Assembly is persuasive evidence of the intent that Section 1205 (k) is not to be construed as requiring that bids be taken upon alternative, common, competitive types of construction.
*589 This brings ns to the second question. Did the commission act in good faith in adopting designs, plans and specifications calling for use only of Portland cement and not alternative designs, plans and specifications calling for use of asphalt products?
This is an action in mandamus which is one for an extraordinary writ. This court has many times announced fundamental requisites which must be met in order to procure such writ. Among those pronouncements are the following:
“It is well established that the issuance of the extraordinary writ of mandamus lies within the sound discretion of the court, and one seeking the writ must show a clear legal right thereto.” State, ex rel. Albright, v. Haber, 139 Ohio St., 551, 553, 41 N. E. (2d), 247.
“Mandamus is an extraordinary writ and will not lie unless the relator can establish a clear legal right thereto. * *
“A writ of mandamus will not issue to compel the observance of law generally, but will be confined to commanding the performance of specific acts specially enjoined Jby law to be performed. * * *
“A peremptory writ of mandamus will not, in any case, be issued, unless the right of the relator thereto be clear, and the act, performance of which is desired, be one of absolute obligation on the part of the person or officer sought to be coerced * * *.” State, ex rel. Stanley, v. Cook, Supt. of Banks, 146 Ohio St., 348, 66 N. E. (2d), 207 (paragraphs one, seven and ten of the syllabus).
“In pursuing the extraordinary legal remedy of mandamus, a relator must show a clear legal right to the relief sought as a condition precedent to the issuance of a writ, and where upon all the evidence presented such right is not established or appears doubtful, the writ will be denied.” State, ex rel. Tarpy, v. *590 Board of Edn. of Washington C. H., 151 Ohio St., 81, 84 N. E. (2d), 276; State, ex rel. Cook, v. Civil Service Commission of City of Norwalk, 152 Ohio St., 71, 77, 87 N. E. (2d), 252.
“Before a writ of mandamus will be granted a clear legal right thereto must be shown, and the burden of establishing such right is upon the relator.” State, ex rel. Bevis, v. Coffinberry et al., Industrial Commission, 151 Ohio St., 293, 85 N. E. (2d), 519.
The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. All legal intendments are in favor of the administrative action. 42 American Jurisprudence, 680, Section 240; Bloch v. Glander, Tax Commr., 151 Ohio St., 381, 86 N. E. (2d), 318; State, ex rel. Gerspacher, v. Coffinberry et al., Industrial Commission, 157 Ohio St., 32, 104 N. E. (2d), 1; Wheeling Steel Corp. v. Evatt, Tax Commr., 143 Ohio St., 71, 54 N. E. (2d), 132.
Abuse of discretion by the commission is not specifically charged, but the charge of acting “arbitrarily” and “without the exercise .of discretion” means “abuse of discretion” if anything. Reference to a few of the many available decisions will suffice to demonstrate the general understanding of abuse of discretion.
“The exercise of an honest judgment, however erroneous it may seem to be, is not an abuse of discretion. Abuse of discretion, and especially gross and palpable abuse of discretion, which are the terms ordinarily employed to justify an interference with the exercise of discretionary power, implies not merely error of judgment, but perversity of will, passion, prej *591 udice, partiality, or moral delinquency.” People v. N. Y. C. Rd. Co., 29 N. Y., 418, 431, quoted from in Alliance v. Joyce, 49 Ohio St., 7, 22, 30 N. E., 270, by Dickman, J.
“The meaning of the term ‘abuse of discretion’ in relation to the granting of a motion for a new trial connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court.” Steiner v. Custer, 137 Ohio St., 448, 31 N. E. (2d), 855.
“* * * it must be kept in mind that the term ‘abuse of discretion’ means more than an error of law or error of judgment * * *. It means ‘a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence’ * * *. Where the court does not exercise a discretion in the sense of being discreet, circumspect, prudent and exercising cautious judgment, there is an abuse of discretion. * * * The term has been defined as ‘a view or action that no conscientious judge, acting intelligently, could have honestly taken." State, ex rel. Wilms, v. Blake et al., Industrial Commission, 144 Ohio St., 619, 624, 60 N. E. (2d), 308. A similar statement appears in State v. Ferranto, 112 Ohio St., 667, 676, 148 N. E., 362.
The petition does not charge fraudulent conduct on the part of the commission. Neither does the petition specifically charge abuse of discretion by the commission. The purport of the charge is that the commission acted arbitrarily and therefore “without discretion” in choosing Portland cement as the material out of which the paving should be constructed. Nowhere is bad faith of the commission charged. The chief engineer of the commission and the firm of consulting engineers employed by the commission are attacked, and relator sought by exhaustive examination to demonstrate that those engineers withheld informa *592 tion from the commission as to relative costs. That effort failed. The worst that the referee could say was that the chief engineer was prejudiced in favor of cement paving. We are not impressed by that conclusion. The chief engineer had had many years experience in the construction of highways and it is but natural that he should have formulated some convictions as to the relative merits of the many materials out of which such a highway could be constructed. The referee specifically found that there was no preconceived plan among the commission, its chief engineer and its consulting engineers that only Portland cement pavement should be considered. In other words, the charges and inuendoes leveled at the chief engineer are not charges against the commission of bad faith. Furthermore, the commission is not bound to adopt a type of construction and to use a particular material merely because such construction would be less expensive than some other type of construction. Cost alone is not controlling. The commission would be remiss in its duties if it adopted a cheaper type of construction notwithstanding its judgment that a more expensive type would be worth its cost and would better serve the intended purpose.
The charge that the material chosen by the commission is controlled by a monopoly was wholly unsupported and merits no further comment.
The record contains ample evidence to establish that the commission, composed of four respected citizens, undertook to perform its duties honestly and efficiently. It employed a recognized nonresident engineering firm as consultant; it held public hearings at which various designs and materials were discussed; it inspected and studied other existing highways; it considered the type of highway proposed by relator and with all the information so obtained the *593 commission exercised its discretion and adopted a plan not to the liking of relator. No bad faith having been shown, the court can not substitute its judgment for that of the commission. This would be true even though the commission may have erred in judgment. Error of judgment does not invalidate discretion, exercised in good faith.
As authority for the position here taken, the relator urges the decision of this court in L. & M. Properties Co., Inc., a Taxpayer, v. Burke, Mayor, 152 Ohio St., 28, 86 N. E. (2d), 768. In that case the Board of Control of Cleveland, by ordinance, authorized improvement of a municipal airport by contract to be let to the lowest responsible bidder after competitive bidding upon a unit basis. The Division of Engineering prepared specifications for the improvement, providing-in the alternative for construction with asphalt or with concrete. The bids for construction with asphalt were lower than those for construction with concrete. Nevertheless, the bids for construction with concrete were accepted. The company bidding on asphalt sought an injunction to prevent the award of the contract to the company bidding on concrete. This court held that the city officials had the right, in the exercise of their discretion, to accept the higher bid and the injunction was denied. In that case, bids were voluntarily taken on alternative materials and the selection of material was made after the bids were taken. The decision in that case is not authority for the proposition that bids on alternative materials must be taken where not specifically required by statute or ordinance. It does not support the relator’s contention in the instant case.
If there were any substance to the charge that the chief engineer withheld comparative cost data from the commission, thus preventing the exercise of discre *594 tion, all doubt on that question was removed by the commission’s session held on December 6, and December 9, 1952. At that time the evidence had been introduced before the referee and all the charges against the chief engineer had been aired. The members of the commission had then studied the entire record made before the referee. On those dates the commission held open meetings in which the relator participated. After considering all the additional information so obtained the commission reaffirmed its action taken September 4, 1951, and readopted the designs, plans and specifications calling for a highway constructed of Portland cement. The relator scoffs at those sessions of the commission, and the referee found that the action taken by the commission on December 9, 1952, “did not constitute an exercise of its discretion.” That conclusion of the referee finds no support in the record.
We read with interest the views of the nonconcurring member of the Court of Appeals as quoted in the opinion of that court, as follows:
“One member of the court is of the opinion that whatever may be claimed by petitioner with respect to lack of information or the consideration of misinformation by the commission in the exercise of its discretion in making a selection of Portland cement concrete pavement on September 4, 1951, it had sufficient information upon which to exercise a proper discretion on December 9, 1952, when it again determined on the use of Portland cement. Any conduct on the part of Kauer or Greiner favoring Portland cement is not chargeable to the commission which acted, as all agree, in good faith in making such determination.” (Emphasis supplied.)
Without difficulty this court concludes that the *595 relator has failed to carry the burden of proof and has failed to establish any bad faith or abuse of discretion on the part of the Ohio Turnpike Commission.
The judgment of the Court of Appeals is reversed and final judgment entered for appellants.

Judgment reversed.

Weygandt, C. J., Taft, Matthias, Hart, Zimmerman and Stewart, JJ., concur.