Marshall, C. J.
 

 This case involves the construction of the inheritance tax laws of this state. It primarily involves a construction of Section 5332, General Code, the pertinent provisions of which are as follows:
 

 “A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or
 
 *538
 
 for the use of a person, institution or corporation, in the following cases:
 

 #*####
 

 “2. When the succession is by -will or by the intestate laws of this state or another state or country, to property within this state, from a person who was not a resident of this state at the time of his death.”
 

 It is not disputed that J. G. Ellerhorst died testate and that he was not a resident of Ohio, and it is not disputed that he owned certain property at the time of his death which was situated within the state of Ohio, and therefore subject to the tax, and we are only concerned with the question whether certain contents of the safe deposit box come within the description of the phrase contained in paragraph 2 of the above-quoted section as follows: “Property within this state.”
 

 We have therefore two questions for consideration: First, Are the certificates of stock of foreign corporations, bonds of foreign corporations, Liberty bonds, and municipal bonds of cities of other states, property within the meaning of Section 5332? and, second, Am they located “within this state”?
 

 The two questions may properly be discussed as one, because the phrase “within this state” has been defined in paragraph 3 of Section 5331, General 'Code, as follows:
 

 “3. ‘Within this state,’ when predicated of. tangible property, means physically located within this state; when predicated of intangible property, that the succession thereto is, for any purpose, subject to, or governed by the law of this state.”
 

 
 *539
 
 In the same section, in paragraph 1 thereof, property is defined as including “everything capable of ownership, or any interest therein or income therefrom, whether tangible or intangible, and, except as to real estate, whether within or without this state,” etc.
 

 In approaching the interpretation of statutes imposing taxes, it should be recognized at the outset that the rule of strict construction should be followed, and that, where there is ambiguity or doubt as to legislative intent, the doubt should be resolved in favor of the person upon whom the burden of taxation is sought to be imposed, and that language employed in a taxation statute should not be extended by implication beyond its clear import, or to enlarge its operation so as to embrace subjects of taxation not specifically named. This rule has been declared by this court in
 
 Gray
 
 v.
 
 City of Toledo,
 
 80 Ohio St., 445, 448, 89 N. E., 12, and
 
 City of Cincinnati
 
 v.
 
 Connor,
 
 55 Ohio St., 82, 91, 44 N. E., 582; and by the Supreme Court of the United States in
 
 Gould
 
 v.
 
 Gould,
 
 245 U. S., 151, 38 Sup. Ct., 53, 62 L. Ed., 211.
 

 As a further preliminary to the discussion of this controversy, it should be stated that many of the states of the Union have enacted inheritance tax laws, and in many of those states the laws are so framed as to impose certain taxes. upon portions of the estates of decedents who are nonresidents of the state where the property is found, and in many instances this results in double taxation upon such property.
 

 It is perfectly clear that statutes are not rendered invalid by the mere fact of their application resulting
 
 *540
 
 in double taxation, and in fact the constitutionality of all such statutes has been repeatedly upheld in all cases where it is only sought to levy taxes upon “property within this state.”
 
 Wheeler
 
 v.
 
 Sohmer, Comptroller,
 
 233 U. S., 434, 34 Sup. Ct., 607, 58 L. Ed., 1030. On the other hand, it has been repeatedly decided by the Supreme Court of the United 'States that any state legislation seeking to impose general taxation upon property outside of the state would transcend the power of state Legislatures.
 
 Fargo
 
 v.
 
 Hart,
 
 193 U. S., 490, 24 Sup. Ct., 498, 48 L. Ed., 761;
 
 Louisville & Jeffersonville Ferry Co.
 
 v.
 
 Kentucky,
 
 188 U. S., 385, 23 Sup. Ct., 463, 47 L. Ed., 513;
 
 Union Refrigerator Transit Co.
 
 v.
 
 Commonwealth of Kentucky,
 
 199 U. S., 195, 26 Sup. Ct., 36, 50 L. Ed., 150, 4 Ann. Cas., 493. On the other hand, double taxation is odious, and wherever it is made to appear should emphasize the soundness of the rule of strict construction.
 

 The Legislature of Ohio in the enactment of the inheritance tax law manifested a desire to avoid subjecting its own citizens to double taxation, and accordingly enacted Section 5333, General Code, which provides that, if the property of a decedent resident of this state is locally subject in another state or country to a tax of like character and amount to that levied in Ohio, such succession shall not be subject to the tax in this state. In other states of the Union reciprocal provisions are enacted designed to avoid double taxation. On the other hand, in many states, including Ohio, inheritance taxes are imposed upon the property of nonresident decedents without regard to the burdens which are imposed by those states 'where'
 
 *541
 
 the decedent resided at the time of his death. Such provisions naturally lead to retaliatory provisions, and thus consciously or unconsciously the state lines become barriers to commercial intercourse. If carried to unreasonable lengths, it is not difficult to see that this would bring about a recurrence of the conditions which prevailed before the adoption of the federal Constitution, and which conditions led to the calling of the convention which framed that instrument. If sound reasons exist for strict construction of ordinary taxation statutes, more potent reasons exist for strict construction of statutes designed to levy inheritance taxes upon property of nonresidents.
 

 Counsel have cited and discussed cases from other states, and, while many of those cases are analogous in principle, we can receive but little aid from them, because they are decided with reference to statutes which do not contain the language found in Section 5331, G-eneral Code, or even language similar thereto. We must determine the legislative intent and meaning to be found in the following language:
 

 “When predicated of intangible property, that the succession thereto is, for any purpose, subject to, or governed by the law of this state.”
 

 It will be observed that it is not the property, but the “succession thereto,” which must become the basis of the inquiry. If the statute should read “the succession thereto is governed by the laws of this state” it would be very simple and would undoubtedly refer to the statutes of descent and distribution, and in this view of the case it could only refer to real estate, because clearly
 
 *542
 
 only real estate of a nonresident of this state, located in Ohio, would be subject to our statutes of descent, it being well settled that the devolution of all intangible property is governed by the laws of the state .of the residence of the decedent, and not by the laws of the state of Ohio.
 

 The principal difficulty in the statute is tierefore the use of the words “for any purpose, subject to.” This phrase is very broad, and might be given an almost unlimited scope, and it is claimed from this language by counsel for the tax commission, that the mere presence of intangible property of any kind within the geographic boundaries of the state, at the time of the death of a nonresident decedent, becomes subject to the tax. It is claimed by counsel for the estate that this phrase refers only to intangible property where it might become necessary to invoke the laws of the state in order to enforce an obligation. Cases are cited from the states of Illinois, Massachusetts, New York, and California which trend toward that solution of the problem, and it is claimed that our statute was enacted later than the statutes of those states, and after the highest courts of those states had construed their laws in harmony with that view. We cannot wholly agree with that contention, because our Legislature did not see fit to adopt the same language upon the question of intangible property belonging to nonresidents found within this state as is found in the legislation' of those states, respectively. It would therefore not be profitable to discuss those cases. We do, however, agree that it clearly appears by the language of Section 5331, General Code, that intangible
 
 *543
 
 property was intended to be divided into two classes, one subject to, tbe other not subject to, the state inheritance tax. None of the securities which are the subject-matter of this controversy are subject to any transfer laws of this state and none of them evidence obligations which could be enforced against the obligors within the state of Ohio, and in fact the executrices of the estate would not be compelled to invoke legal process in Ohio for any purpose other than to compel the trust company to perform its obligations relating to the safe deposit box. If the trust company should refuse to permit the executrices to have access to the box or to withdraw papers therefrom, it might be necessary to resort to legal process to obtain relief against the trust company, but, even so, the executrices would only obtain the possession of papers and documents which are the evidences of legal obligations, and the obligations themselves would have to be enforced in other jurisdictions.
 

 To test the question whether the mere presence of intangible property within the state is the test, let us suppose that Ellerhorst, a resident of Kentucky, having no business relations in the state of Ohio, should be traveling through the state on a through ticket, and should be killed in a railroad accident, and the identical bonds and stocks which are the subject of this controversy should be found in his baggage, and the railroad officials should place them in a safe deposit box within this state for safekeeping; or suppose that while on a visit with friends in Ohio he should be murdered, and those securities should come into the
 
 *544
 
 custody of the coroner; or suppose he were the victim of a robbery in the state of Kentucky, and that the bandit should be apprehended in Ohio, and the securities recovered in this state, and that Ellerhorst should die before redelivery of the property; or suppose Ellerhorst should be kidnapped while having such securities in his possession, and be carried into Cincinnati against his will, or even without his knowledge, and killed, and the securities found on his person within the State of Ohio. In each and all such cases, if the theory of counsel for the tax commission is correct, the securities would be subject to the inheritance tax in the state of Ohio. Manifestly such was not the legislative intent. It would be wholly unreasonable to hold them subject to taxation on the sole theory that the securities are found within the state of Ohio at the time of the death of a nonresident decedent.
 

 Cases have been cited which support the claim that the relation between the estate and the trust company is that of bailor and bailee. We will not at this time decide that abstract question, leaving that question to be determined in some controversy where the duty of a trust company to a depositor is directly and not collaterally involved. While bonds have for some purposes been decided by some courts to be property, and while it is possible that in some courts of other jurisdictions even certificates of stock have been held to be property, it is quite certain that the contrary has been decided as to certificates of stock by the state of Ohio. This has been decided in two well-considered cases,
 
 Ball
 
 v.
 
 Towle Mfg, Co.,
 
 67 Ohio
 
 *545
 
 St., 306, 314, 65 N. E., 1015, 93 Am. St. Rep., 682;
 
 State of Ohio
 
 v.
 
 Davis,
 
 85 Ohio St., 43, 56, 96 N. E., 1022. It is a well-settled principle, so far as Ohio jurisprudence is concerned, that the shares of stock are property, hut that the certificates are only the evidence of the ownership of those shares, and that they amount to no more than the title deeds of real estate. The certificates are a great convenience, and of great value as evidence, but they are certainly no more than evidence. The obligations of all the bonds and stocks which are the subject of this controversy could not only be enforced in other jurisdictions, but if lost, or destroyed could be enforced by secondary evidence of ownership. It is not doubted that the courts of other states would enforce them in a proper action even though the authorities of Ohio would prevent their removal from the state or their delivery to the representatives of the Ellerhorst estate.
 

 It has been decided by this court in the case of
 
 Valentine, Aud.,
 
 v.
 
 Canada Life Assurance Co.,
 
 106 Ohio St., 273, 140 N. E., 150, that bonds are property, and may be deposited as such. But this is only true under the circumstances of that case. The principle decided in that case was that under the statutes the bonds deposited by a life insurance company with the commissioner of insurance become a part of the capital of the insurance company invested in Ohio. Under such circumstances the bonds become property in Ohio. They are utilized in Ohio. They enter into commercial transactions of the insurance company in its business within the state of Ohio. Being a part of the
 
 *546
 
 capital of the company, and especially that portion of the capital which is employed in doing business in Ohio, it is but natural that they should become property taxable in Ohio. A very different principle therefore applies under such circumstances from the principles which apply to bonds which are merely deposited in a safe deposit box under the sole control of the owner thereof, and which do not in any manner enter into commercial transactions within the state of Ohio.
 

 In support of the theory that the mere presence of stocks and bonds in the state of Ohio at the time of the death of a nonresident decedent malees such securities taxable, counsel for the tax commission have cited Section 5348-2, General Code. This section, among other provisions, forbids any depositary of such securities in Ohio to deliver such securities to the personal representatives of any decedent without the consent of the tax commission, and authorizes the county auditor to inspect such securities. This section does not aid in the interpretation of the language of Section 5331. The only purpose of that section is to facilitate an inquest and to determine which securities of a nonresident decedent are taxable and which come under the classifications which are not taxable. It is in no sense a taxation statute. Upon the same theory, we are of the opinion that Section 5348-14, General Code, relating to the distribution of moneys raised by the tax, in the case of nonresidents, does not aid in the interpretation of Section 5331, General Code.
 

 It follows from what has already been said that Liberty bonds, bonds of municipalities outside of
 
 *547
 
 the state of Ohio, and bonds and stocks of corporations organized and resident in other states are not property in the state of Ohio, unless they are utilized ini commercial transactions within the state of Ohio, and that such securities are therefore not “for any purpose subject to or governed by the laws of this state.”
 

 The judgments of the Court of Appeals and of the common pleas are therefore affirmed.
 

 Judgments affirmed.
 

 Robinson, Jones, Matthias, Day and Allen, JJ., concur.
 

 "Wanamaker, J., not participating.