Marshall, C. J.
 

 This cause originated in the court of common pleas of Franklin county, Ohio, as an action by the state of Ohio to recover of Caldwell & Taylor the tax upon the benzol ingredient of benzol gas, under the so-called “gaso
 
 *459
 
 line tax act.” Caldwell & Taylor are dealers as defined by that act, and have paid the tax upon the gasoline ingredient in the benzol gas sold by them, but they refuse to pay the tax upon the benzol ingredient, claiming that it is not subject to tax under the provisions of that act. The controversy involves no question except the interpretation of the gasoline tax act (111 Ohio Laws, p. 294) and a determination whether the benzol ingredient is taxable under the definition of “motor vehicle fuel,” as defined in Section 1 of the act (Section 5526, General Code). That definition is as follows:
 

 “ ‘Motor vehicle fuels’ shall include gasoline and all other volatile and inflammable liquids derived from petroleum, which are produced, refined, prepared, distilled, compounded or used for the purpose of generating power by means of internal combustion motors, by whatever name such fuels may be known or sold. The term ‘motor vehicle fuels,’ however, shall not include the product commonly known as kerosene oil.”
 

 Concisely stated, it is the contention of the dealer that the definition should be construed as though it read “ ‘Motor vehicle fuels’ shall mean gasoline used for the purpose of generating power by means of internal combustion motors,” all other words of the statute, as well as the exception relating to kerosene oil, to have no significance whatever.
 

 The contention of the state, concisely stated, is that the statute should be construed as if it read:
 

 “ ‘Motor vehicle fuels’ shall mean any fuel, except kerosene oil, used for the purpose of generat
 
 *460
 
 ing power by means of internal combustion motors.”
 

 It is contended by tbe dealer in argument that no ambiguity is found in the statutory definition, and it is contended with equal earnestness by the state that there is an ambiguity which must be solved, like any other language of doubtful import, and that, if necessary, resort may be had to evidence. The earnestness of argument of this cause indicates that minds differ as to the meaning of the definition of “motor vehicle fuels,” and, inasmuch as the lower courts have reached different conclusions, and have therefore rendered different judgments, that fact strongly indicates the existence of ambiguity. An ambiguity is defined as doubtfulness or uncertainty; language which is open to various interpretations or having a double meaning; language which is obscure or equivocal. Measured by this definition, and weighed in the light of the present controversy and the arguments which have grown out of it, we have no difficulty in determining that ambiguity exists. The real difficulty is in arriving at the true meaning of the language employed. The true interpretation of the ambiguous language in this statute may be found by resort to the context, to the purpose for which the statute was enacted, as expressed in its preamble, and, if necessary, to scientific facts having a bearing upon the subject-matter, and even to any pertinent extrinsic facts which will aid in arriving at the legislative intent. The ambiguous language must be construed according to certain well-known rules of interpretation, and, the statute
 
 *461
 
 being one levying an excise tax, a strict rule of construction must be followed. This court has several times declared the rule of interpretation of statutes levying taxes; the most recent declaration being found in
 
 Cassidy
 
 v.
 
 Ellerhorst,
 
 110 Ohio St., 535, at page 539 (144 N. E., 252, 42 A. L. R., 372) of the opinion. The rule which has been often declared, and which was followed in that case, is that, where there is ambiguity or doubt as to legislative intent, the doubt should be resolved in favor of the person upon whom the burden of taxation is sought to be imposed, and that language employed in a taxation statute should not be extended by implication beyond its clear import, or to enlarge its operation so as to embrace subjects of taxation not specifically named. This rule is so well settled as not to be longer debatable. It is supported both by authority and reason. In the interpretation of a contract the document is construed strictly against the person who prepared it, and favorably to the person who had no voice in the selection of the language. In a statute relating to the rights of citizens, as between themselves, a reasonable rule of interpretation is followed without favor to any of the parties affected by it. But in statutes where the state is involved, on the one part, and the citizen, on the other, by analogy to the same rule of interpretation governing contracts, the Legislature having chosen the language, that language will not be extended by implication beyond its clear import. Thus it is that in a penal statute, or a statute levying a tax, a rule of strictness will be followed as against the sovereign
 
 *462
 
 and a rule of favor as toward the citizen. This does not, of course, mean that by a simple showing of ambiguity, or of doubtful language, a taxation statute must fail entirely. The language employed should receive a fair interpretation, but its operation will never be extended by implication to embrace subjects not specifically named. By reference to Section 1 of this act (Section 5526, General Code), it will be found that the definition of motor vehicle fuels includes “gasoline and all other volatile and inflammable liquids derived from petroleum. ’ ’
 

 Those words are followed by a limitation as follows:
 

 “Which are produced, refined, prepared, distilled, compounded or used for the purpose of generating power by means of internal combustion motors * # *.”
 

 “Which” is a pronoun, and obviously its antecedent is “gasoline and all other volatile and inflammable liquids derived from petroleum.”
 

 If the word “compounded” were omitted from the definition, all ambiguity would obviously be removed. In determining what effect that word has upon the definition, resort must be had to certain scientific facts in determining the instant controversy.
 

 “Gasoline” is an article of commerce in very general use, and, while no appeal need be made to scientific sources to learn its general qualities and uses, the fact remains that no specific definition of the term has ever been made; that is to say gasoline is a distillate of petroleum, but with widely
 
 *463
 
 varying characteristics depending upon the nature of the crude oil from which it is derived, the type of refining processes employed, and the method of operating the refining processes. There are only two products of petroleum which are practical for use in internal combustion motors, viz. gasoline and kerosene. Kerosene is expressly excluded from the tax, from which it would seem to follow that only gasoline is subject to the tax. It may therefore be wondered why the definition included “all other volatile and inflammable liquids derived from petroleum.”
 

 This brings us to the further question as to the purpose of the use of the ambiguous word “compounded.” The limiting clause, “Which are produced, refined, prepared, distilled, compounded or used,” etc., might refer to derivatives of petroleum only, and the compound might refer to a mechanical mixture of different elements of petroleum, but, inasmuch as all derivatives of petroleum were clearly taxed without reference to the limiting clause, that clause would be rendered wholly meaningless by such an interpretation. The rules of interpretation require that some meaning and effect should be given to every part of the statute, and obedience to this rule requires that we should give an interpretation to the limiting clause whereby the compound therein referred to would be held to mean a compound in which a derivative of petroleum is one ingredient and other substances not derived from petroleum constitute the other ingredient.
 

 All these considerations show the difficulty in
 
 *464
 
 ■which the subject is involved. In this discussion we have had resort to the allegations of the reply, which state that benzol gas, which is being used commercially within this state in internal combustion motors, is a compound containing from 40 to 50 per cent, of benzol and the remainder low grade gasoline. The reply further states that benzol is not a derivative of petroleum. It is in fact manufactured from coal. In addition to these allegations of the reply, which are admitted by the demurrer, resort may properly be had to scientific treatises, from which the foregoing data have in fact been learned. From the same sources it is found that, while kerosene was originally manufactured from coal and bitumen, this was before the discovery of petroleum, and kerosene is now manufactured for commercial uses almost exclusively from petroleum, because it can be so produced more cheaply than from coal. It now being manufactured exclusively from petroleum, it will be presumed that the Legislature had this fact in mind.
 

 If, under the rules of interpretation, we were permitted to resort to implication, the conclusion could be reached that it was intended to tax in their entirety all compounds in which any product of petroleum was an ingredient. To make the statute plain on this subject it would have to read:
 

 “Gasoline and all other volatile and inflammable liquids derived from petroleum, which are (in whole or in part) produced, refined, prepared, distilled, compounded or used.”
 

 The tax being imposed upon gasoline and all other volatile and inflammable liquids derived from
 
 *465
 
 petroleum, and the other words of the statute being a limitation thereon, and this court not being permitted under the rules of interpretation to extend the tax to subjects not .specifically named, the conclusion must be reached that it was not intended to tax the compound in its entirety. On the other hand, it was obviously the legislative intent to tax the compound so far as the ingredient of petroleum is concerned; otherwise, there could be no point in placing any limitation upon the term “gasoline.”
 

 Counsel for the state have pointed out that the purpose of the act as expressed in its title is “to provide for the adequate maintenance of the public highways and streets of the state,” etc., and have further pointed out in Section 2 of the act itself (Section 5527, General Code) that it was for the purpose of “distributing equitably upon those persons using the privilege of driving such motor vehicles upon such highways and streets a fair share of the cost of maintaining and repairing the same,” etc. The purpose of this legislation, as expressed in its title and in the act itself, is not in the least inconsistent with levying the tax upon petroleum products alone. True, the purpose would be more fully served, and additional revenue would be obtained, by extending the taxation to products of coal, so far as such products are used in internal combustion motors in propelling vehicles upon the highways. There could be no injustice in the Legislature thus extending the operation of the tax. Neither can it be said that the imposition of the tax upon petroleum products, and the failure to impose it upon other products usable
 
 *466
 
 in internal combustion motors, constitute such a discrimination as would imperil the validity of the act. An excise tax is not required to have uniform operation throughout the state. If the Legislature intended to impose the tax upon all ingredients entering into a compound of which gasoline is one of the ingredients, we are of the opinion that the Legislature has failed to use apt language to declare such intent. Such intent cannot be found in this statute without resort to implication. If such was the intent, and the members have failed to employ apt language, the fault can be remedied at the next session of the Legislature.
 

 The ultimate inquiry in the interpretation of statutes is to ascertain the legislative intent. It has already been seen that the language of the act as it was finally adopted levies a tax only upon the products of petroleum, and does not expressly include any product of coal. The legislative intent as to what should be included is reflected in the action of the Legislature during the pendency of the bill, after its introduction, and before final passage. The bill as originally introduced, and especially that part of it which defines motor vehicle fuels, reads as follows:
 

 “ ‘Motor vehicle fuels’ shall include gasoline and all fuels derived from petroleum, coal or natural gas, and such other volatile and inflammable liquids as are produced, refined, prepared, distilled, compounded or used for the purpose of generating power by means of internal combustion motors, by whatever name such fuels may be known or sold.”
 

 
 *467
 
 Clearly it was intended by the member who introduced the bill that products of coal should be included. That word having been stricken out, it follows that there was a change of intention on the part of some one. It is, however, urged in argument, and the argument is probably supported by the facts, that the change was not authoritatively made by any committee or by any authoritative action of the Assembly itself, or even of that branch of the Assembly where the bill was originally introduced and where the change was made, viz. the House of Bepresentatives. If the change had been authoritatively made, it would be a clear indication of an intent not to levy the tax upon any product of coal. In the absence of an authoritative change, the fact still remains that every member of the Legislature had before him the language of the bill as originally introduced, but changed by a striking out and an interlineation during the course of its progress before final passage. Every member, therefore, knew that coal was at least under consideration by the author of the bill. Every member also knew that although the products of coal were under consideration thej^ were not expressly and specifically taxed by the language of the law as finally enacted. There was, therefore, a strong indication of an intent on the part of the Legislature not to include the products of coal in the levy of this tax. Our conclusion that the tax was not intended' by the Legislature to be levied on any products other than of petroleum, therefore, finds strong support.
 

 The judgment of the Court of Appeals must
 
 *468
 
 therefore be reversed, and the judgment of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.