The following is quoted from "The Statement of the Facts" in appellant's brief:
"Appellant is a road contractor engaged primarily in constructing and resurfacing roads for the state of Ohio. Diesel fuel is used by appellant to supply power for its road graders. The road graders are used for scraping, grading and ditching operations.
"Appellant's road graders are used to process both dirt and prepared road materials. At times they operate wholly in the area in which the berm is being prepared. At times they operate in the area which is to be the hard-surfaced portion of the road. Where a road is being widened they may operate in part upon the area which is, or is to be, the hard-surfaced area, and in part over the area which is being prepared for surfacing incident to widening operations.
"The graders are transported to the job site on trailers called `carryalls.' The graders in question never drive to the job site over the open highways under their own power; they are carried thither by the special `carryall' vehicles. *Page 496 
"Within the blocked-off construction or repair area the major portion of the power consumed by the road grader is expended in scraping and shoving dirt and road materials into place, or, where the amount of material to be moved is great, in backing off to establish the best position in relation to the earth or other material about to be moved.
"On occasion the grader is used within the plant yards to assemble materials there or to level the yards.
"The road grader at no time operates upon the open highway."
The contention of appellant and the holding of the majority is that no tax can be levied on the use, sale or distribution of diesel fuel "used by appellant to supply power for its road graders" — not merely that only part of such fuel should have been taxed.
Both by Section 5527 and by Section 5541, General Code, "an excise tax is * * * imposed * * * upon the use, distribution or sale * * * of motor vehicle fuel * * *."
With respect to both of those excise taxes, Section 5526, General Code, defines motor vehicle fuel in the following words, so far as material to this case:
"`Motor vehicle fuel' shall mean and include any volatile orinflammable liquid by whatever name such liquid may be known or sold which is commonly and commercially used or usable * * * forthe purpose of generating power for the propulsion of motorvehicles. The term `motor vehicle fuel,' however, shall not include the products commonly known as * * * diesel fuel oil * * * except when such products are sold for use or are used * * * for the purpose of generating power for the propulsion of motor vehicles upon the public highways." (Emphasis added.)
Under the first sentence of the foregoing definition, diesel fuel oil would be included within the definition *Page 497 
of motor vehicle fuel because it is admittedly "usable * * * for the purpose of generating power for the propulsion of motor vehicles." However, the second sentence provides that such oil shall not be included in that definition "except when * * * sold for use or * * * used * * * for the purpose of generating power for the propulsion of motor vehicles upon the public highways."
Admittedly, the diesel fuel oil in the instant case was "used * * * for the purpose of generating power." The above quotation from the "Statement of the Facts" in appellant's brief clearly indicates that that power was "for the propulsion" of the road graders. The road graders would obviously be useless if they could not be propelled. The only remaining questions in determining whether the words used to define motor vehicle fuel include the diesel fuel oil used "for the purpose of generating power for the propulsion" of the appellant's road graders are:
1. Whether such road graders are "motor vehicles."
2. Whether, if they are, they are propelled "upon the public highways."
Both questions have been specifically and clearly answered by the General Assembly.
Thus, in Section 5526, General Code, it is provided:
"`Motor vehicles' shall mean and include all vehicles, engines, machines, or mechanical contrivances which are propelled byinternal combustion engines or motors." (Emphasis added.)
Admittedly, the road graders are "mechanical contrivances which are propelled by internal combustion engines or motors."
Again, in Section 5526, General Code, it is provided:
"`Public highways' are hereby defined as lands and lots overwhich the public, either as user or owner generally has a rightto pass, even though the same may have been closed temporarily by the authorities *Page 498 for the purpose of construction, reconstruction, maintenance orrepair." (Emphasis added.)
This definition indicates that roads are included within its terms "even though * * * closed temporarily * * * for the purpose of construction, reconstruction, maintenance or repair." Generally speaking, the only vehicles or machines which would be propelled over such highways would be those used in construction, reconstruction, maintenance or repair of the highways.
It would seem to follow, to use the words quoted in the majority opinion from Slingluff v. Weaver, 66 Ohio St. 621,64 N.E. 574, that, since the words used by the General Assembly are "free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation"; and that, to use the words quoted in the majority opinion from Caldwell v.State, 115 Ohio St. 458, 461, 154 N.E. 792, there is no "ambiguity or doubt as to legislative intent" and it is not necessary to extend the "language employed * * * by implication beyond its clear import."
Certainly, the general words used, by the General Assembly in Section 5527, General Code, in stating the purpose of the tax, should not be used to limit the specific words, used by the General Assembly in imposing the tax, since those specific words are "free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body."
As stated in paragraph one of the syllabus in Terteling Bros.,Inc., v. Glander, Tax Commr., 151 Ohio St. 236,85 N.E.2d 379: "Where a statute defines terms used therein which are applicable to the subject matter affected by the legislation, such definition controls in the application of the statute."
Furthermore, after the portion of Section 5527, General Code, quoted in the majority opinion, the following language appears, describing one of the *Page 499 
transactions upon or with respect to which it is stated that no tax is imposed by that section:
"(a) The sale of motor vehicle fuel in tank car or cargo lots for delivery by tank car or boat for use wholly for purposes other than propelling motor vehicles on the public highways, or the use thereof wholly for such purposes when so purchased * * *." (Emphasis added.)
Certainly appellant cannot contend that the use of the diesel fuel oil in its road graders was "wholly for purposes other than propelling motor vehicles on the public highways."
As to the liquid fuel tax imposed by former Section 5542-1 etseq., General Code, there was not even any general language, such as that found in Section 5527, General Code, which could be used as an excuse for varying the specific language which the General Assembly used in imposing the liquid fuel tax.
Obviously, from what the General Assembly said in Section 5527, General Code, one of the purposes of the tax imposed by that section was to distribute "equitably among those persons using the privilege of driving such motor vehicles upon such highways and streets a fair share of the cost of maintaining and repairing the same." Other purposes are stated in that section and in Section 5541, General Code.
It is certainly not inequitable to burden appellant with the consequences of this tax, especially since substantial amounts derived from this tax are paid to appellant for the work of these road graders on the highways. *Page 500